ILLINOIS BANKERS LIFE ASSUR. CO. v. STATE ex rel. CLINE, Co. Atty.

No. 32107.   July 1, 1947.

Rehearing Denied Feb. 10. 1948.
Second Petition for Rehearing
Denied May 4, 1948.

*192 P. 2d 678.*

Miley, Hoffman, France & Johnson, of Oklahoma City, for plaintiff in error.

Ralph H. Cline, Co. Atty., of Lawton, for defendant in error.

Randell S. Cobb, Atty. Gen., and Mainard Kennerly, Asst. Atty. Gen., amici curiae.

WELCH, J. The State of Oklahoma ex rel. Ralph H. Cline, county attorney of Comanche county, filed petition against Illinois Bankers Life Assurance Company, a corporation, hereinafter referred to as "Company" alleging that defendant corporation was the owner of certain described real estate and that defendant had held the same for more than seven years, in violation of House Bill No. 77 of the Sixteenth Legislature (Title 18, secs. 86, 86a to 86l, incl., O. S. 1941) and article XXII, sec. 2 of the Oklahoma Constitution, and that defendant is liable for the penalties prescribed by such laws.

In its answer to plaintiff's petition defendant states that formerly another corporation, the Illinois Bankers Life Association, hereafter referred to as "Association," owned separate mortgages covering each tract of real estate described in plaintiff's petition, and that said mortgages were assigned to defendant pursuant to a contract of reinsurance whereby the Association agreed to convey to defendant Company all the assets, moneys, notes, bonds, mortgages, securities, judgments, choses of action, real property and property of every kind and character, to be held and administered by the defendant according to the terms of said contract as a trust fund for the benefit of the individual members of the Association.

That the title of record covering each of said tracts of real estate has stood in the name of defendant from and after the date of its acquisition of title thereto in its attempted collection of debts secured by said mortgages, but that defendant has held such title in trust for the benefit of the members of the Association, according to the terms of the said reinsurance contract; that the equitable right, title, interest and estate in said real estate has, since the acquisition of title thereto as aforesaid, been vested in the members of the Association, and defendant has not owned or held such real estate within the meaning, spirit or intent of the Constitution and statutory provisions set forth in plaintiff's petition.

From an adverse judgment, defendant appeals. Plaintiff assigns error in the allowance of attorney's fee, but did not perfect cross-appeal.

All assignments of error are presented by defendant under the following propositions:

(1) The court erred in finding that the defendant owned a beneficial interest in the real estate.

(2) A corporation is not the owner and holder of real estate within the intent and meaning of House Bill No. 77 of the Sixteenth Legislature, where such corporation holds the mere legal title and the equitable or beneficial title is vested in individuals.

(3) Where real estate constitutes a portion of the corpus of a trust estate and the trust directs the distribution of the corpus to the beneficiaries only through the mediums of money, such real estate is in equity considered or treated as personal property.

The cause was submitted and tried upon written stipulations of fact, which contain a copy of the reinsurance contract.

It is contended by defendant that under the terms of the reinsurance contract, the defendant holds title to the real estate in trust for the use and benefit of the members of the Association.

It is said in the preamble to the contract that the "Association" was engaged in insuring the lives of its members on the assessment plan and that the "Company", the defendant herein, was a life insurance company operating upon the legal reserve basis and that the "Association" deemed it "wise and prudent and for the best interest of its members, that its risks be reinsured with a life insurance company operating upon the legal reserve basis."

The contract provides:

"Section 1. The association hereby transfers its risks to the said company, . . . .

"Section 2. It is agreed . . . the said Association shall, by proper deeds of assignment and transfer, convey and set over to the said company all of its assets, moneys, notes, bonds, mortgages, securities, judgments, choses in action, real property and property of every kind and character and wheresoever situated, belonging to the said Association.

"Section 3. The said Company hereby agrees to accept said transfer to it and agrees to reimburse all the certificates and policies held by living members, . . .

"Section 5. All the present funds of the Association shall be considered as trust funds for the benefit of the members of the Association. . . ."

The words "present funds" in their ordinary usage would have reference solely to cash on hand. The language of section 5 gives no indication of intention to consider anything as trust funds other than the cash on hand at the date of the contract and the accretions thereto as are provided for therein. The references to trust funds in the paragraphs following section 5 and the uses and purposes of the trust fund as set forth give no indication that the words "present funds" have any broader meaning than the express language of section 5, and give no indication of any other trust fund, than that provided by section 5. Paragraph 3 of section 5 provides that the trust fund is charged with all policy payments to assessment plan members. Sections 7 and 8 provide for equitable apportionments from the trust fund to members who elect to convert or transfer their assessment policies to other forms of policies. Section 9 provides that the trust fund is charged with all valid death claims then pending and other valid claims maturing before the effective date of the contract.

We think it clear from the terms of the contract that the parties intended that all assets of the association be transferred to defendant upon assumption by defendant of the risks of the association and without limitations on such assets transferred except that all cash on hand should be considered as trust funds for the benefit of the members of the Association.

It is shown by the stipulation of facts that the record of assets of the Association transferred to defendant under section 2 of the contract have been entered in the records and books of account of defendant separate and apart from the record of other assets and business of defendant and have been held and earmarked as trust funds and administered as trust funds subject to the terms and provisions of the reinsurance contract. The fact that the record of the assets received under section 2 and the administration thereof is kept in separate account by defendant and earmarked as trust funds does not in itself show that they were held and earmarked as trust funds for the benefit of the members of the Association. The stipulation does not so state.

The stipulation does not state that the separate trust fund account was held and administered for the benefit of the members of the Association, but administered subject to the provisions of the contract. No other assets of the Association were declared by the contract to be transferred in trust for the benefit of the members except the funds mentioned in section 5.

The purpose of defendant in setting up in separate account and as trust funds all of the assets received from the Association is not made clear. It seems clear from the terms of the reinsurance contract that the mortgages from which title to the real estate here involved was derived did not pass in trust to defendant.

Under our construction of the reinsurance contract the defendant became possessed of the full title to the real estate, charged with no estate in trust, and defendant's propositions 2 and 3 require no discussion.

The judgment is affirmed.

HURST, C.J., DAVISON, V.C.J., and BAYLESS, and GIBSON, JJ., concur.

---

On Rehearing.

RILEY, J. (dissenting on rehearing). I am now convinced that the judgment of the trial court in this case is in error. The petition for rehearing should be granted and opinion promulgated reversing said judgment. However, the reversal should be on grounds other than those relied upon by plaintiff in error, as more particularly set out herein.

Defendant is the owner of the property in question within the meaning of the applicable provisions of Constitution and statute. The right of plaintiff to recover depends on the constitutionality of provisions of House Bill 77 of the 16th Legislature, 18 O.S. 1941 §§86 and 86a to 86l, inclusive, ch. 46, art. 1, S. L. 1937.

The Attorney General has filed a brief amicus curiae in support of the judgment. He suggests the constitutionality of the Act of the Legislature is brought in question, but the Attorney General does not discuss the constitutionality of the statute, supra. Nevertheless, that is a matter of paramount public concern. This court, in the interest of the public right, may determine the issue of constitutionality, as a necessity.

Section 2, art. 22 of the Constitution provides:

"No corporation shall be created or licensed in this State for the purpose of buying, acquiring, trading, or dealing in real estate other than real estate located in incorporated cities and towns and as additions thereto; nor shall any corporation doing business in this State buy, acquire, trade, or deal in real estate for any purpose except such as may be located in such towns and cities and as additions to such towns and cities, and further except such as shall be necessary and proper for carrying on the business for which it was chartered or licensed; . . . Provided, however, that corporations shall not be precluded from taking mortgages on real estate to secure loans or debts, or from acquiring title thereto upon foreclosure of such mortgages or in the collection of debts, conditioned that such corporation or corporations shall not hold such real estate for a longer period than seven years after acquiring such title; . . ."

The above provision of the Constitution recognized the public evil of corporate ownership of rural real estate not essential to the business of corporations. The Constitution provides a remedy for that which by its terms was deemed evil. Wolfe v. State ex rel. Presson, 163 Okla. 180, 21 P. 2d 1067.

The Legislature, soon after Statehood, recognized the existence of the same evil and gave cognizance to the constitutional provision. The Legislature enacted appropriate statutes which became sections 1636, 9751, 9752, and 9754, O.S. 1931. By these legislative

provisions a method of escheat was established for real estate owned or held by corporations in violation of the Constitution. The statutes provided a procedure for the enforcement of an escheat.

But section 14 of H.B. 77, supra, expressly repealed sections 1636, 9751, 9752, and 9754, O.S. 1931. Substantially all of the provisions of section 2, art. 22, Constitution, were included in 18 O.S. 1941 §81. Further prohibition was made against disposition or encumbrance of land so acquired; a conveyance in no way should be made of such land to another corporation; and by H. B. 77, supra, 18 O.S. 1941 §§86, 86a to 86c, inclusive, restrictions upon the ownership of real estate by corporations were imposed. These restrictions are substantially as provided in section 2, art. 22, Constitution. But instead of providing for escheat of the real estate held in violation of said constitutional provision, the act, 18 O.S. 1941 §86d, provided in part:

"After the passage and approval of this Act, every corporation taking title to or holding real estate, either in its own name or in the name of an agent or trustee who holds the same for the use and benefit of the corporation, in violation of Sections 1, 2, 3, and 4 of this Act, shall be subject, in addition to the other penalties herein provided, to the following penalties, based upon the assessed value of such real estate fixed for the purpose of levying the ad valorem taxes which last became due and payable preceding the date of the accrual of any such penalty, for each year or fraction thereof during which said real estate is held in violation of this Act, as follows, to wit: For the first year one per centum (1%) of the assessed value; second year, two per centum (2%) thereof; third year, three per centum (3%) thereof; fourth year, four per centum (4%) thereof; fifth year, five per centum (5%) thereof; sixth year, six per centum (6%) thereof; and each year thereafter, six per centum (6%) of the assessed value.

"No corporation shall be subject to more than one penalty, for each calendar year, for each tract of real estate held in violation of the provisions of this Act.

"The penalties above provided, when collected by the County Attorney as hereinafter provided, shall be immediately paid over to the Commissioners of the Land Office, who shall credit same to the Permanent School Fund."

Sections 86f and 86g provided, upon notice, for collection of the penalties by the county attorney. If collection were made without suit, the county attorney would receive 15% as a fee; if collection were made as result of suit, the county attorney's fee was fixed at 25% and at not less than $100. This is the statute under which this action was commenced.

Title 18 O.S. 1941, from section 1 to section 186, inclusive, was repealed by section 248. Title 18, ch. A, S. L. 1947. But similar provisions were enacted within sections 22 to 25, inclusive of ch. A.

Section 20 of the Act provides that no corporation of any sort shall, **"except as herein provided"** own, hold, or take any real estate located in this state, outside of any incorporated city or town or any addition. Subsection (4) of subdivision b of the section provides that nothing in this act shall be construed as prohibiting the owning, holding, or taking of any real estate, acquired by a corporation upon the foreclosure of any real estate mortgage held by such corporation, or acquired in the collection of any loan or debt due such corporation, "except as hereinafter provided". Subdivision c of the section provides that any real estate located in this state, outside of any incorporated city or town or any addition, acquired by any corporation by mortgage foreclosure or in the collection of any debt, as provided in subsec. b(4), shall be sold and disposed of within seven years from said acquisition. It is then **"otherwise provided"** in section 23 of the act, that any corporation owning or holding any real estate in violation of sections 20 and 21

of the act, shall, in addition to the other penalties provided by the act, be required to pay for each year or fraction thereof during which such title or interest is unlawfully owned or held: (1) For the first year, 1% of the assessed value of such real estate unlawfully owned or held; (2) for the second year, 2% thereof; and so on up to the sixth year, and thereafter, 6% for each year.

It is clear that by the repeal of the statutes providing for escheat and enactment of sections 5, 7, 8, and 9 of the 1937 Act, and the subsequent repeal thereof, and enactment of section 23, Title 18, art. 1, ch. A, S. L. 1947, the intention and effect were and are to permit or license any corporation to acquire real estate upon foreclosure of a mortgage held by it, or in the collection of a debt, and to own and hold such rural real estate longer than seven years. This is in violation of section 2, art. 22, Constitution. By payment of the penalty of from 1% to 6% of the assessed value thereof, such a corporation is sought to be licensed to violate the Constitution. Corporations acquiring title in foreclosure of a mortgage or in collection of debts secure only a conditional title. The condition is based upon the sale or disposition of the real estate thus acquired, within seven years.

The act is clearly beyond the competence of the Legislature. The act is unenforceable. It is void.

Sections 5, 7, 8, and 9 of art. 1, ch. 46, S.L. 1937, as enacted, in force when this action was commenced, were unconstitutional. Plaintiff was not entitled to recover.

I respectfully dissent to the order denying petition for rehearing.